**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **FREDERICK SCHATZEL,** | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 12 C 5243** |
| | ) | |
| **CENTRAL STATES SOUTHEAST AND SOUTHWEST AREAS PENSION FUND and WESTERN PENNSYLVANIA TEAMSTERS AND EMPLOYERS PENSION FUND,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

Frederick Schatzel has sued the Central States Southeast and Southwest Areas Pension Fund (Central States) and the Western Pennsylvania Teamsters and Employers Pension Fund (Western Pennsylvania) for pension benefits that he contends the defendants owe him. Schatzel alleges that defendants violated the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq*., by wrongfully denying him benefits and by violating their fiduciary duties in their dealings with him. Schatzel has also asserted a state law claim that the defendants should be estopped from denying him pension benefits under the doctrine of promissory estoppel.

Western Pennsylvania has moved to dismiss Schatzel's promissory estoppel and fiduciary duty claims. Central States has filed two motions to dismiss, likewise seeking dismissal of the promissory estoppel and fiduciary duty claims. Central States has also

moved for summary judgment on Schatzel's remaining claim against it, for wrongful denial of benefits under ERISA section 502(a)(1)(B). 29 U.S.C. § 1132(a)(1)(B). Schatzel has moved to strike Western Pennsylvania's motion to dismiss, Central States's first motion to dismiss, and Central States's motion for summary judgment. For the reasons stated below, the Court denies Schatzel's motions to strike; grants the three motions to dismiss, two of which it construes as motions for judgment on the pleadings; and grants Central States's motion for summary judgment.

## Background

Because Schatzel is the nonmoving party, the Court accepts the allegations in his complaint as true and draws reasonable inferences in his favor for purposes of any motions under Federal Rule of Civil Procedure 12. For purposes of the motion for summary judgment, the Court views the facts in the light most favorable to Schatzel and draws reasonable inferences in his favor. The Court takes the following facts from Schatzel's complaint, unless otherwise noted.

Both defendants are Teamsters Union-related pension plans that are subject to ERISA. Schatzel participated in the pension plans from June 1977 until July 1989. Although not alleged in the complaint, the Court notes that a union worker's participation in a pension plan typically arises from his employment with a company that has entered into a collective bargaining agreement with the union. Under the terms of that agreement, the company makes contributions to a pension fund on behalf of its union employees. According to Schatzel, he worked for employers that made contributions to the Central States Pension Fund on his behalf from June 1977 until September 1981. He then became employed with a company that contributed to the Western

Pennsylvania Pension Fund on his behalf. Schatzel participated in the Western Pennsylvania fund until July 1989.

On February 24, 1986, Central States sent Schatzel a letter stating that he had 3.85 years of "credit service" and 5 years of "vesting service." Compl., Ex. 1. The letter further stated that:

> You are eligible for a vested pension benefit once you have at least 10 years of employer contributions. Each of those 10 years must have 20 weeks of contributions or more.
>
> If you leave the Fund and don't return for several years you can lose all of your credited service. This is called a break in service. How long you can safely stay out of the Fund depends on how many vesting service years you have. In your case, you have 5 vesting service years, so you would lose your credited service if you left the Fund for 5 or more years. If you don't accumulate 10 weeks or 37 days of employer contributions before December 31, 1986, you will have a full break in service.

*Id.* Schatzel does not contend that he responded to this letter.

Three years later, in 1989, Schatzel contacted Central States, "concerning his progress towards a vested pension." Compl. ¶ 11. According to Schatzel, Central States responded by preparing an affidavit (which he attached to his complaint) stating that he worked "4 3/12 years under a continuous labor contract negotiated by this Union." *Id.*, Ex. 2. Central States contends that this affidavit was prepared by a union representative, not a representative of the Central States fund, but the affidavit itself is printed on letterhead bearing Central States's name.

According to Schatzel, when he received the affidavit, he forwarded it to Western Pennsylvania. In response, Western Pennsylvania wrote Schatzel a letter on September 25, 1989, that read:

> Our records indicate that you worked under this Fund from 10-24-81 to 7-1-89. Based on your affidavit from the Central States Pension Fund, it

appears you are eligible for a reciprocal pension benefit from this Fund at age 60. Please retain this letter to use as documentation as your proof of eligibility.

*Id.*, Ex. 3. According to the complaint, Schatzel moved to Alaska at some point—the complaint does not specify when—and has remained there to this day. He currently works for the Alaska State Ferry System. Schatzel contends that he moved to Alaska and took on non-union employment based on his belief that he had vested pension benefits that he would begin receiving upon reaching age sixty.

Several years later, in 2010, Schatzel contacted the defendants about his upcoming retirement plans. In response, a Central States analyst wrote to Western Pennsylvania to advise that Central States would not participate in a "Partial Reciprocal Benefit"[1] because Schatzel had left "covered employment"—presumably meaning employment where a collective bargaining act obligated his employer to make contributions to a Teamsters-related pension fund—before he was fifty years old. As a result, the Central States analyst stated, Central States required Schatzel to have thirty years of combined service credit to qualify for a partial pension, rather than ten years. *Id.*, Ex. 5. Schatzel was copied on the February 2010 letter. Approximately six weeks later, Western Pennsylvania wrote Schatzel and informed him that he had earned eight years of participation in the Western Pennsylvania plan, which did not meet the plan's ten-year requirement for vested pension benefits. Western Pennsylvania concluded that Schatzel was "not vested or eligible for the receipt of reciprocal pension benefits, because the Central States Pension Fund will not participate in the reciprocal benefit."

[1] Although the pleadings do not fully explain the pension plans at issue here, it appears that these two funds sometimes provide for a Teamsters member who has participated in different Teamsters-related pension funds to pension benefits even if he has not participated in any single pension plan long enough to qualify for a pension.

*Id.*, Ex. 6 at 2. Schatzel pursued an administrative appeal with both Central States and Western Pennsylvania, but each denied his claim.

Because Central States has moved for summary judgment on Schatzel's denial of benefits claim under ERISA section 502(a)(1)(B), a brief discussion of that fund's decision on Schatzel's administrative appeal is warranted. According to the evidence that Central States has submitted, which Schatzel has not contradicted with his own evidence, Schatzel filed an administrative appeal of Central States's determination regarding his claim on July 19, 2010. On September 23, 2010, Central States's Benefits Claim Appeals Committee considered Schatzel's appeal. The minutes of the committee's meeting reflect that it determined that he had "not established the requirements for a Partial Pension from this Fund." Central States Ex. C at 40. On September 27, 2010, Central States sent Schatzel a letter, notifying him of the decision and explaining why he was not eligible for a partial pension. Compl., Ex. 7. The letter stated that under the Central States plan, which it attached to the letter, a participant or former participant must meet the requirements of each fund to be eligible for a partial pension from Central States. The letter further stated that because Schatzel had left covered service under the Western Pennsylvania plan when he was under fifty years old, he had to have thirty years of combined service credit to qualify for a partial pension. The letter stated that Schatzel had only 11.683 years of combined service credit (3.850 under the Central States plan and 7.833 under the Western Pennsylvania plan) and thus did not qualify for a partial pension.

Central States's September 27, 2010 letter further stated that the Central States plan does not provide for payment of a "partial vested pension." The letter stated that a

participant can obtain a vested pension only if he is eligible based on contributions paid to Central States (not to some other plan). The letter stated that Schatzel was not eligible on this basis because he earned only five of the ten vesting service years required to qualify. Finally, the letter informed Schatzel of his right to appeal the denial of his claim to the fund's trustees.

On March 9, 2011, Schatzel spoke with representatives of Central States and Western Pennsylvania via conference call. Central States staff told Schatzel that the Central States plan does not provide for a partial vested pension and that to qualify for a vested pension from Central States, a participant must have ten vesting service years based on contributions made to Central States, not another fund.

On August 31, 2011, Schatzel appealed to the Central States trustees, who held a hearing on November 9, 2011. The minutes of that hearing reflect that Schatzel's counsel argued that he had been promised a reciprocal benefit at age sixty. The minutes further state that the trustees rejected this contention because they "found no evidence that Central States provided Mr. Schatzel with any written misinformation. Instead, they concluded that Central States provided Mr. Schatzel with complete, accurate, and timely information concerning the Plan's eligibility rules and his status under those rules." Central States Ex. C at 4. The trustees denied Schatzel's appeal.

Central States's plan contains a section addressing "partial pensions." *See* Central States Ex. B at 113. It defines a "partial pension" as one provided to a current or former participant who has insufficient service credit to be eligible for any pension benefits because his years of employment were divided between different pension plans or who, if eligible, would receive less than full benefits because his employment was

divided. *Id.* The Central States plan says that partial pensions are available regarding only eight types of benefits. The only one of these that conceivably applies is an "Early Retirement Pension," which is available to (among others) a participant who left covered service before the age of fifty but had earned thirty years of service credit. *Id.* at 34.

## Discussion

### A. Standard of review

When considering a motion to dismiss, the Court accepts the facts alleged in the complaint as true and draws reasonable inferences in favor of the plaintiff. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). A plaintiff need not plead particularized facts, but the complaint "must actually suggest that the plaintiff has a right to relief, by providing allegations that raise a right to relief above the speculative level." *Arnett v. Webster*, 658 F.3d 742, 752 (7th Cir. 2011). Rule 12(c) similarly provides that "[a] plaintiff whose allegations show that there is an airtight defense has pleaded himself out of court, and the judge may dismiss the suit on the pleadings under Rule 12(c)." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012); Fed. R. Civ. P. 12(c). The standard for deciding a Rule 12(c) motion is the same as that for deciding a motion to dismiss under Rule 12(b)(6) for failure to state a claim. *R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Eng'rs, Local Union 150*, 335 F.3d 643, 647 (7th Cir. 2003).

Summary judgment is proper when "the admissible evidence, construed in favor of the non-movant, reveals no genuine issue as to any material facts and establishes that the movant is entitled to judgment as a matter of law." *Berry v. Chi. Transit Auth.*, 618 F.3d 688, 690–91 (7th Cir. 2010). A genuine issue of material fact exists if there is

sufficient evidence to allow a reasonable jury to find in favor of the non-movant. *Swearnigen-El v. Cook Cnty. Sheriff's Dep't*, 602 F.3d 852, 859 (7th Cir. 2010).

**B. Schatzel's motions to strike**

Schatzel has moved to strike Central States's first motion to dismiss and its motion for summary judgment as well as Western Pennsylvania's motion to dismiss. Schatzel argues that the defendants' first two motions to dismiss were improper because they were filed after both defendants had answered Schatzel's first complaint. The Court agrees that the Federal Rules of Civil Procedure require that any motion alleging a defense under Rule 12(b)(6) "must be made before pleading if a responsive pleading is allowed." Fed. R. Civ. P. 12(b). For this reason, the Court advised the parties on December 4, 2012 that it would consider Western Pennsylvania's motion and Central States's first motion as motions for judgment on the pleadings. *See Forseth v. Vill. of Sussex*, 199 F.3d 363, 367 n.5 (7th Cir. 2000); *cf. Richards*, 696 F.3d at 637 (Rule 12(c) and Rule 12(b)(6) have an equivalent effect, and courts often use the two interchangeably). Additionally, the Court stated in an order dated January 10, 2013 that Western Pennsylvania's motion would stand despite the fact that Schatzel amended his complaint after the motion was filed. Although the order does not expressly address Central States's first motion, there is no reason to treat it any differently. *See* docket entry 40. The Court therefore denies Schatzel's motions to strike the first two motions to dismiss.

Schatzel has also moved to strike or to stay Central States's motion for summary judgment, arguing that discovery is ongoing and that summary judgment is therefore inappropriate. Schatzel's argument is the sort of contention that is appropriately made

via a Rule 56(d) submission. The Court's January 10, 2013 order expressly invited Schatzel to submit a Rule 56(d) request regarding the pending summary judgment motion. *See* docket entry 40. Schatzel chose not to file anything under Rule 56(d) and instead responded to the motion on its merits on February 5, 2013. He has offered no basis to defer consideration of Central States's summary judgment motion, so the Court denies his request to strike that motion.

### C. Defendants' motions to dismiss

Central States has filed two motions to dismiss. The first, which as noted above the Court will consider as a motion for judgment on the pleadings, seeks dismissal of Schatzel's state law promissory estoppel claim. Central States filed its second motion to dismiss after Schatzel amended his complaint, seeking dismissal of Schatzel's claim that it violated its fiduciary duties in its dealings with him.

Western Pennsylvania also filed a motion to dismiss, which the Court also construes as a motion for judgment on the pleadings. Western Pennsylvania's motion essentially combines Central States's two motions into one—it seeks dismissal of Schatzel's state law promissory estoppel claim against Western Pennsylvania and the claim that Western Pennsylvania violated its fiduciary duties in its dealings with Schatzel. Because the three motions deal with overlapping issues, the Court will consider them together.

#### 1. State law promissory estoppel claims

Schatzel contends that both defendants promised him that he had earned a vested pension; he relied on those promises to his detriment; and defendants now should be estopped from denying him the pension benefits they promised. Schatzel

characterizes these as state law claims. Defendants argue that the claims are preempted by ERISA and that, in any event, neither defendant made promises that may be enforced via promissory estoppel.

The Supreme Court has repeatedly recognized the broad preemptive power of ERISA, which Congress enacted "to provide a uniform regulatory regime over employee benefit plans." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004); *see also Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 66 (1987). The Seventh Circuit has held that ERISA preempts state law in two ways: complete preemption under section 502(a), 29 U.S.C. § 1132(a), and conflict preemption under section 514(a), 29 U.S.C. § 1144(a). Because the Court finds that section 502(a) completely preempts Schatzel's state law claims, it does not consider whether those claims are subject to a conflict preemption defense under section 514(a). Moreover, because Schatzel has also included claims against the defendants for his benefits under section 502(a)(1)(B) in his amended complaint, the Court can simply dismiss his state law claims without having to "recharacterize" them as ones arising under federal law. *See Rice v. Panachal*, 65 F.3d 637, 640 (7th Cir. 1995) ("If a state law claim has been 'displaced,' and therefore completely preempted by § 502(a), then a plaintiff's state law claim is properly 'recharacterized' as one arising under federal law." (internal citation omitted)).

Complete preemption confers exclusive federal jurisdiction in certain instances where Congress intended federal legislation to be so broad as to entirely replace any state law claim. *Franciscan Skemp Healthcare, Inc. v. Cent. States Joint Bd. Health & Welfare Trust Fund*, 538 F.3d 594, 596 (7th Cir. 2008). ERISA is one of those instances: "[T]he ERISA civil enforcement mechanism is one of those provisions with

such extraordinary pre-emptive power that it converts an ordinary state common law complaint into one stating a federal claim . . . ." *Id.* (internal quotation marks omitted) (citing *Aetna Health*, 542 U.S. at 209). The Supreme Court in *Aetna Health* articulated a two-part analysis to determine whether a state law claim has been completely preempted by ERISA:

> [I]f an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and where there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely pre-empted by ERISA § 502(a)(1)(B).

542 U.S. at 210; *see also Maatman v. Lumbermens Mut. Cas. Co.*, No. 09 C 5929, 2010 WL 415384, at *3–5 (N.D. Ill. Jan. 28, 2010) (state law claims relating to plaintiff's retirement benefits completely preempted by ERISA). In determining whether a plaintiff's state law claim is completely preempted by ERISA, a court assesses whether the claim is, in essence, a claim to recover benefits due under the terms of an ERISA-governed plan. *Jass v. Prudential Health Care Plan, Inc.*, 88 F.3d 1482, 1489 (7th Cir. 1996).

There is no doubt that the pension plans offered by both Central States and Western Pennsylvania are ERISA plans. 29 U.S.C. § 1002. Moreover, the only relief Schatzel requests is an order directing defendants to award him a pension. Schatzel contends that he is entitled to this relief because defendants made written promises to him that his pension had vested and he had a right to it when he reached age sixty. He contends, in essence, that the defendants' promises regarding his eligibility estop them from relying on the language of the pension plans to deny him a pension. The Court notes that there is some uncertainty in the Seventh Circuit regarding when estoppel principles may apply to claims for benefits under ERISA. *See, e.g., Pearson v. Voith*

*Paper Rolls, Inc.*, 656 F.3d 504, 508 (7th Cir. 2011) (expressly declining to determine whether estoppel principles may be invoked against a defined-benefit, funded pension plan); *Coker v. Trans World Airlines, Inc.*, 165 F.3d 579, 585 (7th Cir. 1999) (equitable principles cannot override rule forbidding oral modifications to ERISA plans); *Black v. TIC Investment Corp.*, 900 F.2d 112, 115 (7th Cir. 1990) (applying estoppel principles against unfunded, single-employer welfare benefit plans). Even in situations where estoppel principles may apply, however, courts consider them only in the context of an ERISA section 502 claim for benefits. *Russo v. Health, Welfare & Pension Fund, Local 705, Int'l Bhd. of Teamsters*, 984 F.2d 762, 767 (7th Cir. 1993); *see also Thomason v. Aetna Life Ins. Co.*, 9 F.3d 645, 650 (7th Cir. 1993) ("We must therefore look to the emerging federal common law of ERISA, utilizing state law as a basis of the federal common law only to the extent that such state law is not inconsistent with congressional policy concerns."). Schatzel's promissory estoppel claim, by contrast, is expressly based on state law.

Additionally, Schatzel's claims do not involve any legal duty implicated by defendants' actions that exists independent of their duties under ERISA. Schatzel may succeed in claiming that defendants should be estopped from denying him coverage based on written misrepresentations, but their obligations to pay him a pension would nevertheless fall under ERISA, not any state law. *Russo*, 984 F.2d at 767; *see also Vanderwiel v. Schawk USA, Inc.*, No. 12 C 4178, 2012 WL 3779040, at *3 (N.D. Ill. Aug. 30, 2012) ("[T]he alleged legal duty owed to [the plaintiff] cannot be decided without reference to plan documents and is not independent of an ERISA eligible plan."). Schatzel's state law claims for promissory estoppel are, in essence, claims for benefits

properly brought under section 502(a). 29 U.S.C. § 1132(a); *Russo*, 984 F.2d at 767. As noted above, Schatzel has also brought federal ERISA claims, and thus the Court need not "recharacterize" his state law claims as ERISA claims. The Court accordingly dismisses Schatzel's state law claims and need not address defendants' alternative arguments in support of dismissal.

**2. ERISA fiduciary duty claims**

Schatzel has also alleged that both Central States and Western Pennsylvania ran afoul of their fiduciary duties under ERISA by misinterpreting the terms of the plans and by failing to review and investigate his claim in good faith. Defendants argue that these claims are merely repackaged claims for benefits under ERISA section 502(a)(1)(B) and thus fail as a matter of law. Defendants argue alternatively that the claims are barred by the statute of limitations specified in section 413. 29 U.S.C. § 1113. Because the Court agrees that Schatzel's claims fail as a matter of law, it need not determine whether they are timely.

Schatzel does not specify the provision of section 502(a) under which he asserts his fiduciary duty claims. Thus the Court will consider the two possible alternatives: section 502(a)(2), which limits fiduciary violations to those specified in ERISA section 409, and section 502(a)(3).

ERISA section 409 provides that

> [a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary . . . .

29 U.S.C. § 1109; *see also* 29 U.S.C. § 1132(a)(2) (providing cause of action for

violation of party's fiduciary duties). The pension to which Schatzel claims entitlement is a defined benefit plan, which "assure[s] participants whose rights had vested that they will receive a specified payout upon retirement" that is typically paid out of "a pool of assets in trust for the plan," administered by trustees with a fiduciary duty to maintain the pool responsibly. *Spano v. The Boeing Co.*, 633 F.3d 574, 578–79 (7th Cir. 2011). For defined benefit plans, the rule under section 409 is clear: it provides a remedy solely for a plan-wide breach and limits the available remedy to what the statute expressly provides. *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 144 (1985); *Spano*, 633 F.3d at 579 (rules from *Russell* "apply in a straightforward way to defined-benefit plans"). Because Schatzel's requested relief—payment of a pension to him—is not authorized by section 402 and because he does not allege a plan-wide breach, his fiduciary duty claims cannot be brought under section 502(a)(2).

Defendants argue that Schatzel's fiduciary duty claims are similarly improper under ERISA section 502(a)(3). They rely on *Varity Corp. v. Howe*, 516 U.S. 489 (1996), which construed section 502(a)(3) as a "catchall" provision that "acts as a safety net, offering appropriate equitable relief for injuries caused by violations that [section] 502 does not elsewhere adequately remedy." 516 U.S. at 512. Thus, the Court concluded, "we should expect that where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be appropriate." *Id.* at 515 (internal quotation marks omitted). As one judge in this district has noted, the trend among the circuit courts is to interpret *Varity* "to hold that a plaintiff 'whose injury creates a cause of action under [section 502(a)(1)(B)] may not proceed with a claim under [section 502(a)(3)].'" *Schultz*

*v. Prudential Ins. Co.*, 678 F. Supp. 2d 771, 778 (N.D. Ill. 2010) (quoting *Korotynska v. Metro. Life Ins. Co.*, 474 F.3d 101, 106 (4th Cir. 2006)). Though the Seventh Circuit has not expressly decided the issue, it has also observed that "a majority of the circuits are of the view that if relief is available to a plan participant under subsection (a)(1)(B), then that relief is *un*available under subsection (a)(3)." *Mondry v. Am. Family Mut. Ins. Co.*, 557 F.3d 781, 805 (7th Cir. 2009). Other courts in this district have agreed that a claim under section 502(a)(3) for conduct that is actionable under another part of the statue is improper. *See, e.g., Krase v. Life Ins. Co.*, No. 11 C 7659, 2012 WL 4483506, at *3 (N.D. Ill. Sept. 27, 2012) (relevant inquiry is whether adequate remedy exists under section 502(a)(1)(B)); *Hakim v. Accenture U.S. Pension Plan*, 656 F. Supp. 2d 801, 808 (N.D. Ill. 2009) (equitable claim cannot proceed when identical claim exists under ERISA section 204(h)); *Jurgovan v. ITI Enters*., No. 03 C 4627, 2004 WL 1427115, at *4 (N.D. Ill. June 23, 2004) (section 502(a)(3) claim must be dismissed because duplicative of relief sought under section 502(a)(1)(B)).

Section 502(a)(1)(B) allows a plan participant to "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan . . . ." 29 U.S.C. § 1132(a)(1)(B). That section expressly provides Schatzel with a remedy for a wrongful denial of benefits. Schatzel has not provided any reason to depart from the trend followed by both a number of federal circuit courts and a number of judges in this district. Because the actions of which he complains in his fiduciary duty claims are cognizable under section 502(a)(1)(B), the Court dismisses the fiduciary duty claims.

**D. Central States's motion for summary judgment**

Central States has moved for summary judgment on Schatzel's claim for benefits under ERISA section 502(a)(1)(B). 29 U.S.C. § 1132(a). Western Pennsylvania, on the other hand, has not moved for summary judgment on Schatzel's section 502(a)(1)(B) claim. Thus in addressing Central States's motion, the Court will address only Schatzel's claim vis-à-vis Central States and will not comment on his claim against Western Pennsylvania.

Under ERISA, a court reviews the denial of benefits *de novo*, "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *Tompkins v. Cent. Laborers' Pension Fund*, ___ F.3d ___, No. 12-1995, 2013 WL 952424, at *3 (7th Cir. Mar. 13, 2013). If the plan gives the administrator discretionary authority, a court applies an "arbitrary and capricious" standard of review. *Hess v. Reg-Ellen Mach. Tool Corp. Emp. Stock Ownership Plan*, 502 F.3d 725, 727 (7th Cir. 2007). The parties agree that Central States's pension plan provides such discretionary authority and thus the arbitrary and capricious standard applies.

The Court's review under the arbitrary and capricious standard is deferential. *Davis v. Unum Life Ins. Co.*, 444 F.3d 569, 576 (7th Cir. 2006); *Semien v. Life Ins. Co.*, 436 F.3d 805, 812 (7th Cir. 2006). A plan administrator's interpretation of a plan "is not arbitrary and capricious if it falls within the range of reasonable interpretations. Interpretations that controvert the plain meaning of a plan, however, may be overturned." *Green v. UPS Health & Welfare Package for Retired Employees*, 595 F.3d 734, 738 (7th Cir. 2010) (internal quotation marks and citations omitted).

The trustees of the Central States plan determined that Schatzel was not entitled to pension benefits. Specifically, the trustees noted that the plan does not provide for payment of a partial vested pension, and that to qualify for a vested pension, Schatzel must have earned ten vesting service years by participating with Central States solely and directly. The plan itself imposes an additional limitation on qualifying for a vested pension, requiring a participant to have a retirement date prior to January 1, 1987. (All fund participants who retired after that date are eligible for a contribution-based pension instead of a vested pension.) The trustees also noted that Schatzel had lost his vesting service years based on an extended break in service. The trustees made reference to the September 1986 letter to Schatzel in which Central States warned him of this "break in service" policy and advised him of the precise date on which credit for his vesting service years would expire.

The trustees further concluded that because Schatzel could not qualify for any of the eight types of pension benefits that the plan authorizes the fund to pay as a partial pension, he was not entitled to any pension benefits from Central States. This, too, is a reasonable interpretation of the plan. Article IV of the plan sets out the relevant criteria that a participant must meet to be eligible for the eight types of benefits that may be paid as partial pensions. Under the clear language of the plan, Schatzel did not satisfy the criteria for any of them. In particular, he did not satisfy the criteria for an "early retirement pension" as the Central States plan defines it. This provision permits a participant who is under fifty years old at the time he stops working in covered service to receive a pension only if he has at least thirty years of service credit. It is undisputed that Schatzel did not satisfy this requirement.

In assessing Schatzel's claim, the trustees identified the relevant provisions of the plan that barred his claim and explained to him the reasons that they were denying the claim. For this and the other reasons just described, the Court concludes that no reasonable fact finder could conclude that the trustees' decision to deny his claim was arbitrary or capricious. *See Hess v. Reg-Ellen Mach. Tool Corp.*, 423 F.3d 653, 658 (7th Cir. 2005) (court should not set aside denial of benefits if based on any reasonable interpretation of a plan).

Schatzel alternatively argues that even if the trustees' decision was not arbitrary and capricious, the trustees are estopped from denying him a pension because Central States's July 14, 1989 affidavit of service was a promise to him that he had earned 4 3/12 service years that would go toward a reciprocal pension with Western Pennsylvania. Schatzel contends that he relied on that representation to his detriment and that Central State reasonably could have expected its representation in the affidavit to induce Schatzel's actions. As discussed more fully above, Schatzel originally asserted promissory estoppel as a separate state law claim, but because ERISA completely preempts that claim, the Court will consider his arguments in the context of his ERISA section 502(a)(1)(B) claim.

Under federal common law, an ERISA plaintiff seeking to invoke promissory or equitable estoppel against a defendant must show: "(1) a knowing misrepresentation; (2) made in writing; (3) with reasonable reliance on that misrepresentation by the plaintiff; (4) to [his] detriment." *Coker*, 165 F.3d at 585. The affidavit, dated July 14, 1989, identifies Schatzel as the employee in question, identifies the two employers for which he worked while participating in the Central States pension fund, and identifies

the “Application” as one for “Pension Benefits.” Compl., Ex. 2. The affidavit then certifies that Schatzel “worked 4 3/12 years under a continuous labor contract negotiated by this Union.” *Id.* The affidavit did not include any representation, however, that Central States would participate in a reciprocal pension with any other fund, nor did it describe any benefits that Schatzel was entitled to receive based on his years of service. The reference to “Pension Benefits” in the “Application” line of the affidavit is somewhat ambiguous, and it is possible that a reasonable finder of fact, drawing inferences in Schatzel’s favor, could conclude that the affidavit suggests that those 4.25 years of work have some import that is relevant to his entitlement to a Central States pension plan. *Id.* No reasonable fact finder, however, could conclude that based on this isolated ambiguous reference, Central States was representing to Schatzel that it would participate in Western Pennsylvania’s reciprocal pension plan.

In short, no rational finder of fact could conclude that Central States knowingly made misrepresentations in its June 1989 affidavit. Schatzel’s argument that Central States should be estopped from using the language of its pension plan against him therefore fails. Because the trustees’ decision to deny his claim for pension benefits was neither arbitrary nor capricious, Central States is entitled to summary judgment on Schatzel’s section 502(a)(1)(B) claim for benefits.

**Conclusion**

For the reasons stated above, the Court grants Western Pennsylvania’s motion to dismiss [docket no. 29], grants both of Central States’s motions to dismiss [docket nos. 26 and 44], and grants Central States’s motion for summary judgment [docket no. 21]. Counts 1 through 4 and Count 7 of Schatzel’s amended complaint are therefore

dismissed. The Court denies Schatzel's motions to strike [docket nos. 32, 33, and 34]. The case is set for a status hearing on April 29, 2013 at 9:30 a.m. to set a schedule for pretrial proceedings and trial on Schatzel's remaining claim against Western Pennsylvania.

MATTHEW F. KENNELLY
United States District Judge

Date: April 22, 2013